RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0035p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

SAMUEL MORELAND,

*Petitioner-Appellant,*

*v.*

NORM ROBINSON, Warden,

*Respondent-Appellee.*

No. 15-3306

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:05-cv-00334—Thomas M. Rose, District Judge.

Argued: December 9, 2015

Decided and Filed: February 11, 2016

Before: BOGGS, ROGERS, and GRIFFIN, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Jacob A. Cairns, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbus, Ohio, for Appellant. Katherine E. Mullin, OFFICE OF THE OHIO ATTORNEY GENERAL, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jacob A. Cairns, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbus, Ohio, for Appellant. Katherine E. Mullin, OFFICE OF THE OHIO ATTORNEY GENERAL, Cleveland, Ohio, for Appellee.

─────────────────

**OPINION**

─────────────────

ROGERS, Circuit Judge. In 1986, a three-judge panel convicted Samuel Moreland of killing his girlfriend Glenna Green, her adult daughter, and three of her grandchildren, and then

sentenced him to death. In 2005, Moreland filed a federal habeas petition, which the district court denied and dismissed with prejudice. In 2012, while Moreland's appeal of that court's denial of his habeas petition was pending, Moreland filed two motions: a motion for relief from judgment under Federal Rule of Civil Procedure 60(b) and a motion to amend the already-denied 2005 petition under Federal Rule of Civil Procedure 15. In these motions, Moreland sought to raise claims about his waiver of his right to a jury trial, and his trial counsel's failure to use certain police reports and to obtain an expert to challenge the State's blood evidence.

Moreland's motions are second or successive habeas petitions that the district court lacked jurisdiction to consider. Rather than denying Moreland's motions, the district court should have transferred them to this court to review as requests for permission to be filed. Considered as requests for such permission, Moreland's requests do not meet the gatekeeping requirements for presenting claims in a second or successive habeas petition. Moreland therefore has not established a basis for relief from this court.

I.

Our most recent opinion in this case sets forth most of the relevant facts. *See Moreland v. Bradshaw*, 699 F.3d 908 (6th Cir. 2012). Here we describe only certain procedural facts relevant to this appeal.

In April 1986, after Moreland waived trial by jury, a three-judge panel found Moreland guilty of the aggravated murders of his girlfriend Glenna Green, her adult daughter Lana Green, and Glenna Green's three grandchildren Violana Green, Datwan Talbott, and Daytrin Talbott. *Id*. at 914–15. The panel also held that Moreland was guilty of the attempted aggravated murders of Glenna Green's grandchildren Tia Green, Dayron Talbott, and Glenna Talbott. *Id*. at 915. The panel sentenced Moreland to prison and death. *Id*. He exhausted direct-appeal and state-post-conviction remedies. *Id*. at 916.

In 2005, Moreland filed a federal habeas corpus petition, which the district court denied and dismissed with prejudice. Moreland timely appealed on May 5, 2009. After briefing, this court heard oral argument on April 18, 2012.

On November 6 of that year—while the case was pending in this court and in the interim between oral argument and issuance of opinion—Moreland filed two motions in the district court: a Rule 60(b) motion and a motion for leave to file an amended habeas petition.

Moreland's 2005 federal petition raised nine claims. His motion to amend that petition requested leave to (1) raise a new claim and (2) supplement with new evidence a claim already presented in that federal petition. The proposed new claim was that the failure to use certain police reports at trial violated Moreland's rights, either because the prosecutor withheld the evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), or because trial counsel failed to use the evidence even though they had it, in violation of *Strickland v. Washington*, 466 U.S. 668 (1984).

The claim to be supplemented—really, subclaim—was Subclaim 3(2): trial counsel provided ineffective assistance by failing to obtain a blood-analysis expert to challenge the State criminalist's analysis of the blood found on Moreland's pants.

Moreland's Rule 60(b) motion sought to raise the same new claim presented in his motion to amend and to supplement Subclaim 3(2) with the same new evidence. The Rule 60(b) motion proceeded under the theory that, under the intervening Supreme Court decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), Moreland could raise these claims even though they would previously have been held defaulted. *Martinez* held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S. Ct. at 1320.

That same day, Moreland moved in this court to stay appellate proceedings and to remand his habeas case to the district court so that he could litigate the Rule 60(b) motion. On November 15, 2012, this court affirmed the district court's denial of habeas relief. *Moreland*, 699 F.3d at 935. The same day, this court issued an order denying as moot the motion to stay proceedings. A copy of the latter order was filed in district court. On November 29, 2012, Moreland moved for rehearing and rehearing en banc.

Back in district court on December 13, 2012, the magistrate judge denied the motion to amend for lack of jurisdiction, but without prejudice to the motion's renewal once the mandate issued. Although the magistrate judge ruled directly on the motion to amend, he made only a recommendation on the motion for relief from judgment because that motion was "by definition post-judgment." Nonetheless, he recommended the same fate for the motion for relief from judgment: denial for lack of jurisdiction without prejudice to renewal once the mandate issued.

Six days later, on December 19, 2012, this court denied rehearing en banc. That same day, Moreland moved to stay the mandate pending his filing of a certiorari petition. Meanwhile, in district court, he filed no objections to the magistrate judge's recommendation that his Rule 60(b) motion be denied without prejudice to renewal once the mandate issued.

On January 14, 2013, the district court adopted the magistrate judge's report and recommendation and denied Moreland's Rule 60(b) motion. The next day, this court stayed the mandate pending Moreland's filing of a certiorari petition.

The Supreme Court denied Moreland's certiorari petition on October 7, 2013. *Moreland v. Robinson*, 134 S. Ct. 110 (2013). The court of appeals mandate was issued two days later on October 9, 2013, and Sixth Circuit Case No. 09-3528 was closed.

On October 11, 2013, Moreland returned to district court and filed revised versions of his Rule 60(b) motion and his motion to amend. Pursuant to a district-court order to digitize the record, Moreland later refiled the revised versions of these motions. Moreland's revised motions sought to raise the same new and supplemented claims that Moreland presented in his original motions. Moreland also sought to raise a new ineffective-assistance-of-trial-counsel claim in both of these motions. The new claim was that his trial counsel were ineffective when they had sodium pentothal administered to Moreland—allegedly involuntarily—shortly before his jury-waiver hearing, and when they allegedly allowed him to waive his jury-trial right while still under the influence of the drug. Further, in his revised Rule 60(b) motion, Moreland also sought to supplement with new evidence another claim already presented in the original federal petition: Moreland's claim that he did not knowingly, intelligently, and voluntarily waive his right to trial by jury.

On September 2, 2014, the magistrate judge filed his report and recommendation. *Moreland v. Robinson*, No. 3:05-cv-334, 2014 WL 4351522 (S.D. Ohio Sept. 2, 2014). He recommended denying both the Rule 60(b) motion and the motion to amend because they actually constituted second or successive federal habeas corpus petitions, permission for which to file had not been obtained from this court. *Id*. at *2–5, 10. The magistrate judge, however, recommended granting a certificate of appealability. *Id*. at *10.

Two days later, this court issued *Clark v. United States*, 764 F.3d 653 (2014). In *Clark*, this court stated that "[a] motion to amend is not a second or successive [28 U.S.C.] § 2255 motion when it is filed before the adjudication of the initial § 2255 motion is complete—*i.e.*, before the petitioner has lost on the merits and exhausted her appellate remedies." *Clark*, 764 F.3d at 658. The post-judgment motion in *Clark* was filed before the time to file an appeal from the habeas denial had expired. *Id*. at 659. Moreland filed objections to the magistrate judge's report and recommendations, contending that his motions were not second or successive habeas petitions under *Clark*. Rather than ruling on the objections, the district court recommitted the matter to the magistrate judge for a supplemental report.

The magistrate judge withdrew the earlier report and recommendation on Moreland's motions "in light of" *Clark*. Then he filed a new report and recommendation, in which he recommended holding that the motions, under *Clark*, were *not* second or successive petitions. *Moreland v. Robinson*, No. 3:05-cv-334, 2015 WL 127977, at *2–3 (S.D. Ohio Jan. 8, 2015). In concluding that the motions were not second or successive petitions, the magistrate judge appeared to accept Moreland's theory that "the judgment sought to be amended was not yet 'final' when he first moved for relief from it" because he originally filed his Rule 60(b) motion "while his appeal was pending." *Id*. at *3. Relying on this court's statement in *Clark* that "a party seek[ing] to amend a complaint after an adverse judgment . . . must meet the requirements for reopening a case established by Rules 59 or 60," the magistrate judge then concluded that "whether to allow the Motion to Amend turns on the same factors which control whether or not to grant the Rule 60(b) Motion." *Moreland*, 2015 WL 127977 at *4 (citing *Clark*, 764 F.3d at 661).

The magistrate judge recommended denying Moreland's motions because they did not meet the requirements for post-judgment relief. *Id*. at *10. The magistrate judge noted that Moreland contended that relief was justified under Federal Rule of Civil Procedure 60(b)(6), which provides that a "court may relieve a party . . . from a final judgment" for "any other reason that justifies relief." *Id*. at *4–5. The magistrate judge explained that even if *Martinez* applies to the Ohio framework that governed Moreland's post-conviction appeal, *Martinez* is "available only to excuse the procedural default of an ineffective assistance of trial counsel claim which happens when post-conviction counsel provides ineffective assistance in failing to adequately raise that claim." *Id*. at *7. The magistrate judge concluded that there were no ineffective-assistance-of-trial-counsel claims in Moreland's petition that the district court or this court "declined [to] review on the merits because of procedural default in presenting those claims post-conviction." *Id*. at *7–9. The magistrate judge therefore reasoned that *Martinez* did not allow Moreland to "ignore his obligation to present ineffective assistance of trial counsel claims in post-conviction, litigate other ineffective assistance of trial counsel claims to merits conclusions in the Ohio courts, the District Court, and the Sixth Circuit, then start with new ineffective assistance of trial counsel claims in the District Court if he could show it was ineffective assistance of post-conviction counsel to fail to present them in the first instance." *Id*. at *9.

The magistrate judge further reasoned that even if Moreland were granted relief from judgment, amendment of his petition would be futile because the statute of limitations would bar him from raising new claims. *Id*. at *9–10. The magistrate judge therefore recommended denying Moreland's motions, but granting a certificate of appealability "[b]ecause of the uncertain state of the law on the application of *Martinez* in Ohio and the extent of its reach," the same reason for which he had previously recommended a certificate of appealability. *Moreland*, at *10.

The district court overruled Moreland's objections, adopted the revised report and recommendation in its entirety, denied the Rule 60(b) motion and the motion to amend, and granted a certificate of appealability. *Moreland v. Robinson*, 3:05-cv-334, 2015 WL 1286163 (S.D. Ohio Mar. 19, 2015). Moreland timely appealed.

II.

Moreland's motions were second or successive petitions for habeas corpus relief that the district court lacked jurisdiction to review. Claims may not be presented in a second or successive petition for habeas corpus relief without permission from this court. 28 U.S.C. § 2244(b)(3); *Gonzalez v. Crosby*, 545 U.S. 524, 528, 532, 538 (2005). Failure to obtain precertification for the filing of such a petition deprives the district court of jurisdiction to adjudicate the claims raised in such a petition. *Burton v. Stewart*, 549 U.S. 147, 149, 152–53, 157 (2007) (per curiam).

Moreland's motions, although purportedly a Rule 60(b) motion and a post-judgment motion to amend, actually raise habeas claims. Rule 60(b) motions and motions to amend may not be used as vehicles to circumvent the limitations that Congress has placed upon the presentation of claims in a second or successive application for habeas relief. *Gonzalez*, 545 U.S. at 531–32; *Clark*, 764 F.3d at 658–59. Hence, when faced with what purports to be a Rule 60(b) motion or a motion to amend, federal courts must determine if it really is such a motion or if it is instead a second or successive application for habeas relief in disguise. *Gonzales*, 545 U.S. at 530–31; *Clark*, 764 F.3d at 658–59. "[F]or the purposes of § 2244(b) an 'application' for habeas relief is a filing that contains one or more 'claims.'" *Gonzales*, 545 U.S. at 530. A § 2244(b) claim is "an asserted federal basis for relief from a state court's judgment of conviction." *Id*. A movant is not making a habeas claim when he seeks only to lift the procedural bars that prevented adjudication of certain claims on the merits. *Id*. at 532 n.4. But he *is* making a habeas claim when he seeks to add a new ground for relief or seeks to present "new evidence in support of a claim already litigated." *Id*. at 531–32.

Moreland is using his Rule 60(b) motion and motion to amend to try to raise new habeas claims and to supplement already litigated claims with new evidence. In particular, Moreland's motions originally sought to raise a new claim based upon his trial counsel's failure to use certain police reports at trial, and to supplement with new evidence a previously litigated claim based upon the failure of his trial counsel to obtain an expert to challenge the State's blood evidence. In his refiled motions, Moreland added another new claim based upon his waiver of his right to a jury trial and sought to supplement with new evidence a previously litigated claim

based upon his waiver of his right to a jury trial. All of these claims are second or successive claims for habeas relief that the district court lacked jurisdiction to review.

A.

Even under a broad reading of *Clark*, the latter two claims—dealing with the jury waiver—were clearly dismissible as presenting second or successive claims. This is because Moreland added these claims to his motions after he fully exhausted his appellate remedies. A post-judgment motion to amend or Rule 60(b) motion that raises habeas claims is a second or successive petition when that motion is filed after the "petitioner has lost on the merits and exhausted her appellate remedies." *Clark*, 764 F.3d at 658.[1] As stated above, Moreland filed his Rule 60(b) motion and motion to amend before this court had affirmed the district court's denial of his habeas petition. The district court denied both of Moreland's motions without prejudice to their being refiled after this court's mandate issued. After this court issued its mandate affirming the district court's denial of Moreland's habeas petition and after the Supreme Court denied Moreland's petition for a writ of certiorari, Moreland refiled these motions, adding new claims relating to his waiver of his right to a jury trial. Because Moreland's appeal of the district court's denial of his habeas petition was no longer pending when he filed his revised motions, Moreland exhausted his appellate remedies before he added his jury-waiver claims to his motions. Accordingly, Moreland's motions are second or successive petitions to the extent that these motions seek post-judgment relief so that he can raise these claims.

Moreland contends that his revised motions were filed before his appellate remedies were fully exhausted. To support this assertion, Moreland notes that the time for him to petition the Supreme Court for rehearing of his petition for writ of certiorari had not yet expired when he filed his revised motions. Sup. Ct. R. 44(2). This contention is unavailing. *Clark* does not

---

[1]The petitioner in *Clark* filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct her sentence, not a 28 U.S.C. § 2254 petition for habeas relief. 764 F.3d at 655. However, the Antiterrorism and Effective Death Penalty Act seeks to limit the filing of second or successive petitions by both § 2254 and § 2255 petitioners. 28 U.S.C. §§ 2244(a)–(b), 2255(h). Further, although the petitioner in *Clark* filed a motion to amend, not a Rule 60(b) motion, as the *Clark* court itself recognized, in determining whether a petitioner's motion is a second or successive habeas petition, "it makes no difference whether the successive petition is filed as a Rule 60(b) motion or a [post-judgment] motion to amend." 764 F.3d at 659 n.2. *Clark* therefore guides the analysis of Moreland's motions.

establish that the adjudication of Moreland's original habeas petition was complete only when the time for Moreland to petition the Supreme Court for rehearing expired. Rather, the *Clark* court held that a motion to amend was not a second or successive application for relief when the petitioner filed the motion to amend before the time for her to appeal the district court's decision dismissing her original § 2255 motion had expired. *Clark*, 764 F.3d at 659. In contrast to the petitioner in *Clark*, Moreland filed the revised motions that included his jury-waiver claims after this court affirmed the district court's denial of his original habeas petition and after the Supreme Court denied his petition for a writ of certiorari. Moreland therefore had a full opportunity to have his original habeas petition adjudicated before he added these new claims to his revised motions. Accordingly, with respect to the relevant claims, Moreland's revised motions were second or successive motions for habeas corpus relief even under a broad reading of the *Clark* opinion.[2]

## B.

Moreland's motions are also second or successive petitions to the extent that the motions seek to raise the claims that Moreland included in these motions when they were originally filed. Our decision in *Clark* held that a post-judgment petition was not second or successive in a case where the petition was filed before the expiration of the time to appeal the district court's denial of the first petition, while our earlier decision in *Post v. Bradshaw*, 422 F.3d 419, 421, 424–25 (6th Cir. 2005), held that a habeas petition *was* a second or successive petition where the petition was filed during the pendency of the appeal from denial of the first petition. The two cases together thus require that a Rule 60(b) motion or a motion to amend that seeks to raise habeas claims is a second or successive habeas petition when that motion is filed after the petitioner has appealed the district court's denial of his original habeas petition or after the time for the petitioner to do so has expired. In other words, if the district court has not lost jurisdiction of the original habeas petition to the court of appeals, and there is still time to appeal, a post-judgment

---

[2]Moreland also contends that the Warden waived his ability to argue that Moreland's motions were second or successive petitions. However, failure to obtain precertification for the filing of such a petition deprives the district court of jurisdiction. *Burton*, 549 U.S. at 149, 152–53, 157. Subject-matter jurisdiction can never be forfeited or waived. *United States v. Cotton*, 535 U.S. 625, 630 (2002).

motion is not a second or successive habeas petition. Applying this standard, Moreland's claims should have been treated as second or successive.

In *Post*, we held that a Rule 60(b) motion that was filed after the petitioner had appealed the district court's denial of his original habeas petition was a second or successive habeas petition. 422 F.3d at 421, 424–25. In *Clark*, we held that a motion to amend filed before the time to appeal the district court's denial of the petitioner's original § 2255 motion had expired was not a second or successive application for relief. In so holding, we relied upon a Second Circuit case that held contrary to the holding in *Post* on facts indistinguishable from those in *Post*. *Clark*, 764 F.3d at 658–60 (citing *Ching v. United States*, 298 F.3d 174, 176–81 (2d Cir. 2002)).[3]

We recognize that there is broad language in *Clark* about motions filed before a petitioner has "exhausted her appellate remedies." 764 F.3d at 658. But the actual facts of *Clark* are that the motion was filed before a notice of appeal was filed and before the time for filing such a notice expired. *Post*, in turn, is controlling precedent because "[a] published prior panel decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this [c]ourt sitting en banc overrules the prior decision." *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (internal quotation marks omitted). Our duty to follow binding precedent of this court therefore requires us to reconcile *Post* and *Clark*. The actual holdings of the two cases are consistent with—and indeed require—our conclusion that a Rule 60(b) motion or motion to amend that seeks to raise habeas claims is a second or successive habeas petition when that motion is filed after the petitioner has appealed the district court's denial of his original habeas petition or after the time for the petitioner to do so has expired. As set out above, Moreland filed his Rule 60(b) motion and motion to amend long after he appealed the district court's decision denying his original habeas petition. Moreland's motions were therefore second or successive habeas petitions even with respect to the claims that Moreland raised during the pendency of the appeal from the denial of the first habeas petition. The district court lacked jurisdiction to address them when they were originally filed.

---

[3]The parties in *Clark* did not cite *Post* in their briefing to this court.

III.

Moreland did not request precertification from this court to file a second or successive habeas petition that includes the claims that he seeks to raise in his Rule 60(b) motion and motion to amend.  Rather than denying Moreland's motions, the district court should have transferred those motions here for processing as requests for permission to present claims in a second or successive habeas petition.  *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997).  We remedy that error by construing Moreland's briefs as making that request.  *See In re Bowling*, 422 F.3d 434, 440 (6th Cir. 2005).  However, Moreland's motions still fail because his proposed claims do not meet the gatekeeping requirements for raising new claims in a second or successive habeas petition.

Moreland seeks to supplement with new evidence his claims that his jury waiver was not knowing, voluntary, and intelligent and that his trial counsel were ineffective when they failed to obtain an expert to challenge the State's blood evidence.  However, by doing so, he would be re-presenting already presented claims.  *Gonzalez*, 545 U.S. at 531.  "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."  28 U.S.C. § 2244(b)(1).  Moreland therefore may not file a second or successive habeas petition that supplements these claims with new evidence.

Moreland also seeks to present a new claim that his trial counsel were ineffective when they allegedly drugged him and when they allowed him to waive the right to jury trial while drugged, as well as a claim that the failure to use certain police reports at trial violated Moreland's rights under *Strickland* or *Brady*.  Section 2244(b)(2) provides that claims not presented in a prior habeas petition shall be dismissed from a second or successive petition unless

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Moreland's new claims do not satisfy these gatekeeping requirements. Moreland's new claims do not rely on a new rule of constitutional law made retroactive by the Supreme Court. Although Moreland cites *Martinez* and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), in an attempt to lift the otherwise applicable procedural bar that stems from his failure to raise these claims in state court, the *Martinez* rule was equitable, not constitutional. *Martinez*, 132 S. Ct. at 1319–20. *Trevino*, which was merely an application of the rule established in *Martinez*, also did not create a new rule of constitutional law. 133 S. Ct. at 1921.

Moreland's new claims also do not rely on evidence that was not available when he originally filed his habeas petition. He acknowledges as much when he raises the *Martinez-Trevino* arguments. Counsel cannot be ineffective for failing to do what could not be done. By accusing counsel of ineffectiveness in not presenting these claims in trial-level state post-conviction proceedings, Moreland is necessarily acknowledging that, with due diligence, the evidence in support *could* have been presented then—before he ever got to federal court. Further, Moreland and his trial counsel both testified in a 2002 state proceeding that Moreland's trial counsel drugged him before he waived his right to a jury trial. Similarly, Moreland stated that he had "reason to believe" that his trial counsel obtained the police records that support his other new claim either before his trial or in response to an April 25, 1986 order from the state trial court, and that his state post-conviction counsel "obtained unredacted copies of the reports during the course of the state court litigation." Evidence that supported Moreland's new claims was therefore available when he filed his original habeas petition in 2005. These new claims do not meet the gatekeeping requirements for presenting claims in a second or successive habeas petition.

IV.

While it is entirely clear that Moreland's claims regarding his waiver of his right to a jury trial are second or successive, we recognize that the test applied in Part II.B above to determine

that the other claims were second or successive derives from two of our cases that could be clearer. However, even if Moreland's motions with respect to those issues were not second or successive petitions, they were not sufficient to warrant post-judgment relief. Out of an abundance of caution in this capital case, we explain why this is so.

Moreland's claims regarding a blood expert and regarding certain police reports do not present the type of extraordinary circumstances that warrant post-judgment relief.[4] Under Federal Rule of Civil Procedure 60(b)(6), a "court may relieve a party . . . from a final judgment, order or proceeding" for "any other reason that justifies relief." Rule 60(b)(6) relief is granted only in limited circumstances:

> [R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation. This is especially true in an application of subsection (6) of Rule 60(b), which applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule. This is because almost every conceivable ground for relief is covered under the other subsections of Rule 60(b). Consequently, courts must apply Rule 60(b)(6) relief only in unusual and extreme situations where principles of equity mandate relief.

*In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008) (citing *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001)). In order to prevail on his motion to amend, Moreland must also establish that his claims present the type of extraordinary circumstances that justify relief under Rule 60(b)(6). This is because a party seeking to "amend a complaint after an adverse judgment . . . must shoulder a heavier burden than if the party sought to amend a complaint beforehand. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60." *Clark*, 764 F.3d at 661 (citation and brackets omitted).

Moreland seeks to supplement with new evidence his claim that his trial counsel were ineffective when they failed to obtain an expert to challenge the State's blood evidence. This

---

[4]Moreland does not appear to contend that the fact that *Martinez* and *Trevino* were decided after the district court denied Moreland's original habeas petition by itself constitutes an extraordinary circumstance requiring Rule 60(b) relief. In any event, such a contention would fail because the change in decisional law represented in *Martinez* and *Trevino* is not, by itself, an extraordinary circumstance warranting Rule 60(b)(6) relief. *Henness v. Bagley*, 766 F.3d 550, 557 (6th Cir. 2014); *McGuire v. Warden*, 738 F.3d 741, 750 (6th Cir. 2013).

claim does not present extraordinary circumstances that would justify reopening his case after the entry of judgment. Moreland acknowledges that his ability to supplement this claim with new evidence is procedurally defaulted, but contends that he can pursue his right to present this evidence under *Martinez* and *Trevino*. This court held in *Morris v. Carpenter* that *Martinez* does not apply to "claims that were fully adjudicated on the merits in state court because those claims are, by definition, not procedurally defaulted." 802 F.3d 825, 844 (6th Cir. 2015). Moreland presented his claim that his trial counsel were ineffective when they did not obtain an expert to challenge the State's blood evidence in state post-conviction proceedings, and the Court of Appeals of Ohio denied this claim on the merits. *State v. Moreland*, No. 17557, 2000 WL 5933, at *6–7 (Ohio Ct. App. Jan. 7, 2000). Accordingly, even assuming that *Martinez* and *Trevino* apply to the Ohio framework that governed Moreland's post-conviction appeal, these cases do not allow Moreland to present new evidence in support of his blood-evidence claim. This claim therefore does not present extraordinary circumstances that justify post-judgment relief.

Moreland's claim that his trial counsel were ineffective when they failed to use certain police reports at trial also does not establish that this is the type of extraordinary case in which post-judgment relief is warranted. This claim was procedurally defaulted because Moreland never presented this claim in his state post-conviction appeal. To excuse this default under *Martinez*, Moreland must demonstrate that this claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." 132 S. Ct. at 1318–19. Even if the *Martinez-Trevino* exception applies to the Ohio framework that governed Moreland's appeal, his police-report claim is not substantial. Moreland therefore cannot excuse his procedural default of this claim under the *Martinez-Trevino* exception.

This claim is based in part upon police reports that Moreland contends support his theory that Eugene Hagans committed the murders for which Moreland was sentenced to death. Throughout his appeal, Moreland has consistently attempted to cast Eugene Hagans as an alternative suspect for these murders. The homicides that occurred in this case took place in a residence that Moreland shared with his girlfriend, Glenna Green. Green's daughter Tia Talbott was also living in the residence. Eugene Hagans was the father of two of Talbott's children. After the homicides occurred, Talbott told the police that Hagans had threatened to kill her.

Talbott had also previously complained to the police that Hagans had threatened to kill her, and had raped, choked, and punched her.  Hagans was a suspect in connection with the murders.

The police reports were allegedly helpful to Moreland because of a discrepancy regarding the address where Hagans was arrested.  At Moreland's trial, Officer Doyle Burke testified that he located Hagans on the night of the murders at his home at 788 Edgemont Avenue in Dayton, Ohio.  In the prosecutor's closing, the prosecutor contended that Hagans was not a suspect in part because when the police located him "at his home over on [Edgemont] he was in his underwear with his family in the basement.  He was out of it and the detectives proved that."  This is consistent with a police report that stated that Hagans was arrested on 788 Edgemont Avenue in Dayton at 1:25 a.m. on November 2, 1985.  However, the Dayton detectives also created a police report that stated that Hagans was arrested on the night of the murders at 1325 South Broadway Street, a location approximately one half mile away from Hagans's home.  An officer later corrected the statement that Hagans was arrested at 1325 South Broadway, noting that the 1325 South Broadway address was erroneous and that Hagans in fact had been arrested at 788 Edgemont.

Moreland has not established that his trial counsel provided ineffective assistance when they failed to use at trial the address discrepancy in these police reports.  In order to show that his trial counsel were ineffective, Moreland must show that "his counsel's performance was deficient and that it prejudiced him.  Deficient performance means that 'counsel's representation fell below an objective standard of reasonableness.'"  *Nichols v. Heidle*, 725 F.3d 516, 539 (6th Cir. 2013) (citing *Strickland*, 466 U.S. at 687–88).  When evaluating defense counsel's performance under *Strickland*, we must "indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (citing *Strickland*, 466 U.S. at 689).  Further, defense counsel need not "pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  As stated above, the police reports are consistent with Officer Burke's testimony at trial that he arrested Hagans in his home, because the report stating that Hagans was arrested at a different location

was later corrected. The discrepancy in the police reports therefore does not provide much of a basis to challenge Hagans's alibi or to challenge the competence of the detectives' actions and investigation as a whole. Accordingly, Moreland's trial counsel did not perform deficiently when they did not use these police reports at trial.

Even if Moreland's trial counsel performed deficiently by failing to use these police reports at trial, Moreland was not prejudiced by this failure. A defendant is prejudiced under *Strickland* when there is a "reasonable probability" that, but for his counsel's deficient performance, "the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693–94) (internal quotation marks omitted). The police reports are consistent with the State's testimony that Hagans was arrested at his home, and do not support Moreland's theory that Hagans committed the murders. Accordingly, there is not a reasonable probability that the result at Moreland's trial would have been different if his counsel had used the police reports.

Moreland's claim that his trial counsel were ineffective when they failed to use a crime-scene report that described the location at which the detectives found his identification card also fails to meet the performance and prejudice elements of *Strickland.* At trial, a detective testified that he found a brown leather bag in a closet in the house at which the murders occurred. The officer testified that the bag contained Moreland's identification card, a rifle scope, and ammunition. Another detective also testified that Moreland's identification card was located in this bag. One of these detectives created a crime-scene report that stated that a brown leather bag was found in a closet inside a room in the house at which the murders occurred. The report stated that the bag contained "a scope for a rifle, miscellaneous tools, dice and one round from a .357 piece of ammo." The report also stated that "[t]he ID that was found in this room belongs to one Samuel Moreland." Moreland contends that this crime-scene report contradicts the trial testimony that his identification card was located in the bag. To support this argument, Moreland claims that since the report stated that his identification was located in the room, but

did not list the identification along with the other contents of the bag, "the only conclusion to be drawn is the ID was not in the bag when it was located."

Moreland's claim again does not satisfy the performance element of *Strickland*. Although the report fails to include the identification card among the items listed in the bag, the report never states that the identification card was located in a different part of the house. The crime-scene report therefore does not establish that Moreland's identification card was found outside of the bag. Counsel's performance is not deficient when counsel fails to use evidence that "would be of little help" to the defendant. *Strickland*, 466 U.S. at 699. Accordingly, Moreland's trial counsel did not perform deficiently when they failed to use a crime-scene report that would have been of little help to Moreland and that would not have proven that his identification card was located outside of the bag that contained the rifle scope.

Even if Moreland's counsel performed deficiently when they failed to use this crime-scene report, Moreland was not prejudiced by this failure. Moreland argues that evidence that Moreland's identification was not located in the bag that contained the rifle scope would be significant because "[a]t trial, the prosecution had very little evidence connecting Moreland to the crime." This contention is unavailing. "Multiple pieces of evidence, including eyewitness testimony, Moreland's admission that he shot a gun near the time of the murders, the drops of blood found on Moreland's clothes that matched the blood types of two of the victims, and evidence showing that Moreland argued with Glenna immediately before the murders, support his identity as the killer." *Moreland*, 699 F.3d at 919. The three-judge panel's determination that Moreland had committed the murders therefore did not hinge upon the panel's acceptance of the State's testimony that Moreland's identification card was located in the bag that also contained the rifle scope. Accordingly, Moreland has not shown that there is a reasonable probability that the result of his trial would have been different if his trial counsel had used this crime-scene report.

In the alternative, Moreland alleges that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to provide the police reports relating to Hagans's arrest and the crime-scene report to Moreland's defense counsel prior to trial. Moreland argues in the alternative because he does not know whether his defense counsel received these reports during

his trial. Even if the *Martinez-Trevino* exception extends to Moreland's *Brady* claim, in order to excuse his procedural default of this claim, Moreland would have to show that his underlying *Brady* claim is "substantial." *Martinez*, 132 S. Ct. at 1318–19. Moreland fails to meet this burden. *Strickland* and *Brady* claims use the same "reasonable probability" standard to assess prejudice. *Strickland*, 466 U.S. at 693–94; *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). For the reasons stated above, Moreland did not establish that there was a reasonable probability that the result of his trial would have been different if his defense counsel had used the police reports. Accordingly, assuming arguendo that the *Martinez-Trevino* exception applies in Ohio, Moreland's *Brady* claim—like Moreland's *Strickland* claim—does not state a substantial claim for relief. Moreland's *Brady* claim therefore does not establish that this is the type of extraordinary case in which post-judgment relief should be granted.

The judgment of the district court is affirmed.