RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0241p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

EDMUND ZAGORSKI,

*Petitioner-Appellant,*

*v.*

TONY MAYS, Warden,

*Respondent-Appellee.*

No. 18-6052

─────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:99-cv-01193—Aleta Arthur Trauger, District Judge.

Decided and Filed:  October 29, 2018

Before:  COLE, Chief Judge; COOK and GRIFFIN, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:**  Paul R. Bottei, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant.  John H. Bledsoe, OFFICE OF THE ATTORNEY GENERAL OF TENNESSEE, Nashville, Tennessee, for Appellee.

COOK, J., delivered the opinion of the court in which GRIFFIN, J., joined.  COLE, C.J. (pp. 10–15), delivered a separate dissenting opinion.

─────────────

## OPINION

─────────────

COOK, Circuit Judge.  Edmund Zagorski, a Tennessee capital prisoner, appeals from the district court's denial of relief from judgment under Federal Rule of Civil Procedure 60(b), asserting that his impending execution, an intervening Supreme Court decision, and the merits of

three procedurally defaulted constitutional claims mandate equitable relief. Giving due deference to the district court's discretion in balancing the equities, we AFFIRM.

**I.**

Like most capital cases, this case presents a tangled procedural history. In 1984, a Tennessee jury convicted Edmund Zagorski of two first-degree murders and sentenced him to death. The Tennessee Supreme Court affirmed both the convictions and sentence on direct appeal. *State v. Zagorski*, 701 S.W.2d 808, 810 (Tenn. 1985).

After state courts denied all post-conviction relief, Zagorski petitioned a federal court for a writ of habeas corpus. Among numerous other claims, Zagorski alleged that his trial counsel was ineffective for failing to investigate an alternative suspect, that the trial court erred by improperly instructing the jury on the meaning of mitigating circumstances, and that the jury could not constitutionally impose the death penalty because prosecutors originally offered a plea deal for two life sentences. Finding all three arguments procedurally defaulted, the district court denied habeas relief, we affirmed, and the Supreme Court denied certiorari. *See Zagorski v. Bell*, 326 F. App'x 336 (6th Cir. 2009), *cert. denied*, 559 U.S. 1068 (2010).

In 2012, the Supreme Court decided *Martinez v. Ryan*, permitting ineffective assistance of counsel at initial-review collateral proceedings to establish cause for a prisoner's procedural default of an ineffective assistance claim at trial. 566 U.S. 1, 9 (2012); *see also Trevino v. Thaler*, 569 U.S. 413, 417 (2013). Zagorski returned to district court and moved for post-judgment relief under Federal Rule of Civil Procedure 60(b)(6). He alleged that a combination of *Martinez* and *Edwards v. Carpenter*, 529 U.S. 446 (2000), excused his procedural defaults, permitting him to litigate the merits of his underlying substantive claims. The district court denied all relief, but nonetheless granted a certificate of appealability. Certificate in hand, Zagorski appealed.

This court scheduled briefing, but with the date of his execution looming, Zagorski moved for a stay to permit full consideration of the merits of his Rule 60(b)(6) appeal. His concurrent requests for the stay in district and appellate court yielded contrary results: the district court denied Zagorski's motion, and a divided panel of this court granted it. Ultimately, the

Supreme Court vacated our stay. *Mays v. Zagorski*, No. 18A385, 2018 WL 4934191 (U.S. Oct. 11, 2018). A timely-issued reprieve from execution, however, provides this court the opportunity to take up the merits.

**II.**

The "catchall" provision in Rule 60(b)(6) vests courts with a deep reservoir of equitable power to vacate judgments "to achieve substantial justice" in the most "unusual and extreme situations." *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007). And with great power comes great responsibility; in deciding these motions, a district court must "intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in the light of all the facts." *McGuire v. Warden*, 738 F.3d 741, 750 (6th Cir. 2013) (citation omitted). Out of deference to this highly fact-bound process, this court asks not whether we think that Zagorski presented extraordinary circumstances warranting relief, but rather whether the district court abused its discretion in deciding that he did not. *See Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014).

**III.**

Zagorski submits that the district court incorrectly denied his Rule 60(b)(6) motion because it failed to consider the merits of three claims originally raised in his habeas petition: (1) his trial counsel ineffectively failed to fully investigate other suspects; (2) the trial court incorrectly instructed the jury on the meaning of mitigating circumstances in violation of *Lockett v. Ohio*, 438 U.S. 586 (1978); and (3) his capital sentence violated *United States v. Jackson*, 390 U.S. 570 (1968), because the prosecution originally offered two life sentences in exchange for pleas of guilty to each murder before trial. Although the district court found all three claims procedurally defaulted on habeas review, Zagorski now argues that a combination of *Martinez* and *Edwards* overcomes all defaults. He also maintains that because this capital case involves "significant and substantial" constitutional claims that a court has never reviewed, the balance of the equities demands Rule 60(b)(6) relief. As did the district court, we evaluate each argument in turn.

A. Claims Raised on Habeas Review

Although the district court denied habeas relief on Zagorski's ineffective assistance of trial counsel claim, he contends that *Martinez* resuscitates it. In *Martinez*, the Supreme Court delineated a very narrow exception to the *Coleman* rule prohibiting a habeas petitioner from demonstrating cause for a procedural default by claiming ineffective assistance of trial counsel during state post-conviction proceedings. *Martinez*, 566 U.S. at 8; *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). But *Martinez* did not change a criminal defendant's constitutional rights; it merely adjusted the equitable rules as to when he might avail himself of federal statutory relief. *Wright v. Warden*, 793 F.3d 670, 672 (6th Cir. 2015). And like most of our sister circuits, we have determined that changes in decisional law alone do not establish grounds for Rule 60(b)(6) relief. *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 714 (6th Cir. 2015); *see also Miller v. Mays*, 879 F.3d 691, 698–99 (6th Cir. 2018). A petitioner must present something more than just the availability of statutory relief from which he was previously barred. Recognizing this, the district court rightly discounted this factor.

The district court also denied relief for Zagorski's procedurally defaulted *Lockett* and *Jackson* claims. In his Rule 60(b) motion, Zagorski took a new tack, arguing ineffective assistance because his trial counsel failed to object to both the jury instructions and the imposition of death. But these brand new ineffective assistance of counsel claims—presented for the very first time in this motion—are themselves procedurally defaulted. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). To excuse this default, Zagorski points to *Edwards*, which "require[s] a prisoner to demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." 529 U.S. at 451. Thus, Zagorski argues, *Edwards* supports his contention that, under *Martinez*, the ineffective assistance of post-conviction counsel establishes the cause and prejudice to excuse the newly raised and procedurally defaulted ineffective assistance of trial counsel claims, which in turn overcomes the procedural bar to the original *Lockett* and *Jackson* claims that Zagorski raised in his habeas petition.

As the district court recognized, permitting a two-layer showing of cause to excuse the default of a substantive constitutional claim would detonate *Coleman*'s procedural default bar.

501 U.S. at 732. *Coleman* ensures state courts the first opportunity to correct any constitutional violations stemming from their own mistakes. *See id.* at 730–32. Zagorski's reading flouts the very principle of federalism that the Supreme Court took pains to protect, and would permit habeas petitioners to resurrect procedurally defaulted claims in a motion for Rule 60(b)(6) relief by newly invoking the phrase: "post-conviction counsel ineffectively failed to raise an ineffective assistance of trial counsel claim." We cannot read *Martinez* as the exception that swallows this rule. "If *Coleman*'s revetment is to be torn down, it is not for us to do it. Rather, we must follow the case which directly controls" and leave the Supreme Court to overrule its own decisions. *Hunton v. Sinclair*, 732 F.3d 1124, 1127 (9th Cir. 2013) (quotation omitted).

But even if we credited this expansive reading of *Martinez* and *Edwards*, we cannot address a habeas claim disguised as a motion for Rule 60(b) relief. The Supreme Court instructs us to construe a Rule 60(b) motion as a successive habeas petition if it "seeks to add a new ground for relief." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005); *see also Moreland v. Robinson*, 813 F.3d 315, 322–23 (6th Cir. 2016) ("A movant is not making a habeas claim when he seeks only to lift the procedural bars that prevented adjudication of certain claims on the merits. But he *is* making a habeas claim when he seeks to add a new ground for relief or seeks to present 'new evidence in support of a claim already litigated.'" (quoting *Gonzalez*, 545 U.S. at 531)). By now asserting ineffective assistance of trial counsel claims in an attempt to revive his *Lockett* and *Jackson* claims, Zagorski presents new constitutional bases for habeas relief.[1] Thus, he needed this court's authorization to pursue those claims. *Moreland*, 813 F.3d at 322 (citing 28 U.S.C. § 2244(b)(3)).

Although we need not address the merits, *see Sheppard v. Robinson*, 807 F.3d 815, 820 (6th Cir. 2015), we note that to prevail under 28 U.S.C. § 2244(b)(2)(A), Zagorski must show that each new ineffective assistance of trial counsel claim "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

---

[1]The dissent suggests that Zagorski's newly-raised ineffective assistance of counsel argument presents a procedural hurdle and not a substantive claim. This cannot be true. Zagorski's theory of *Martinez* and *Edwards* permits us to reach the underlying *Lockett* and *Jackson* claims only through an ineffective assistance of trial counsel claim. This ineffective assistance of trial counsel claim raises substantive concerns about Zagorki's Sixth Amendment right to counsel. Thus, though the dissent correctly states that Zagorski seeks "to lift the procedural bars that prevented consideration of his *Lockett* claim," he attempts to do so with a substantive claim. Dissent at 13.

unavailable[.]" Because he relies on *Martinez*—an equitable rather than constitutional rule—he cannot. *See Moreland*, 813 F.3d at 326.

### B. Other Equitable Factors

In addition to his *Martinez* arguments, Zagorski argues that his capital sentence and the merits of his constitutional claims present extraordinary circumstances warranting Rule 60(b)(6) relief, and that the district court abused its discretion when it concluded otherwise. We disagree.

"[E]ven in cases involving the death penalty, we must afford 'profound respect' to the finality interests stemming from our prior decision denying *habeas* relief." *Miller*, 879 F.3d at 700–01 (quoting *Sheppard*, 807 F.3d at 821). This does not mean that we ignore the "irreversible finality of [an impending] execution," or that we do not take seriously the Supreme Court's instruction that "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." *Thompson v. Bell*, 580 F.3d 423, 444 (6th Cir. 2009) (quoting *Sanders v. United States*, 373 U.S. 1, 8 (1963)). But as the district court recognized, impending capital punishment does not mandate Rule 60(b) relief, especially when the merits of Zagorski's defaulted claims do not support such an extraordinary remedy. *See Miller*, 879 F.3d at 701; *see also Gonzalez*, 545 U.S. at 535–36 (noting that habeas cases rarely present the appropriate circumstances for exercising a court's equitable authority under Rule 60(b)(6)).

Like the panel in *Miller*, we do not necessarily agree that our cases require us to consider the merits of Zagorski's underlying constitutional claims when evaluating whether the district court abused its discretion in balancing the equities and denying Rule 60(b)(6) relief. *See Miller*, 879 F.3d at 702–03. Neither a Third Circuit case, *Cox v. Horn*, 757 F.3d 113, 124–25 (3d Cir. 2014),[2] nor an entirely distinguishable Supreme Court case involving the denial of a certificate of

---

[2]The dissent relies on *Cox* to support adopting a "flexible, multifactor approach" that more seriously weighs changes in decisional law when balancing the equities for Rule 60(b)(6) relief. Yet the Third Circuit's more flexible approach presents a minority position within the circuits. *See* 12 J. Moore, Moore's Federal Practice §§ 60.48[5][b]–[c] (3d Ed. 2018). Most circuits—including our own—require something much more "extraordinary" than the change in a law that an appellant originally decided not to appeal, but now seeks to benefit from. *See Ackermann v. United States*, 340 U.S. 193, 202 (1950) ("Neither the circumstances of petitioner nor his excuse for not appealing is so extraordinary as to bring him within . . . Rule 60(b)(6).") And notably, none of the cases that the dissent cites ultimately granted a habeas petitioner Rule 60(b)(6) relief.

appealability and a substantive question as to whether a petitioner had received ineffective assistance of counsel, *Buck v. Davis*, 137 S. Ct. 759, 775–80 (2017), persuades us otherwise. Permitting appellants to evade habeas jurisdictional bars by raising the merits of a procedurally defaulted claim in a Rule 60(b)(6) motion could "expose federal courts to an avalanche of frivolous postjudgment motions." *Gonzalez*, 545 U.S. at 534–35. But *Miller* acknowledged that our cases presented some uncertainty as to the proper course of action, *see Wright*, 793 F.3d at 673–74, and assumed it appropriate to consider the merits to decide "whether it changes the balance of equities with respect to [the appellant's] Rule 60(b)(6) motion." 879 F.3d at 702. We do the same.

To prevail on his underlying ineffective assistance of trial counsel claim, Zagorski must show that trial counsel's alleged failure to investigate other suspects for the murders constituted deficient performance that resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because "there can be no finding of ineffective assistance of counsel without prejudice," *Phillips v. Bradshaw*, 607 F.3d 199, 216 (6th Cir. 2010), we look first to whether Zagorski shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Zagorski cannot satisfy this burden. He provided several statements to the police "implicat[ing] himself in the killings" along with "other mercenaries," but declined to identify any other individuals he claimed were involved. *Zagorski*, 701 S.W.2d at 811–12. As the district court explained, given the overwhelming evidence against Zagorski, a more thorough investigation of another suspect would not have reasonably been likely to affect the outcome of the trial.

Next, Zagorski's *Lockett* claim requires us to examine "whether the [allegedly unconstitutional] instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Significantly, a juror in a capital case may "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett*, 438 U.S. at 604. As the district court

noted, no such violation occurred here. When asked by the jury to define what constitutes a mitigating circumstance, the trial court stated:

> Mitigating circumstances are within your province, if there are any. You have heard the evidence of the case, and no additional evidence was produced at the sentencing hearing, so **you may consider all of the evidence that was presented in the entire case**. The law sets out certain mitigation circumstances which have no particular applicability in this case, **but you're not limited to those, so you can consider any mitigating circumstances that in your judgment would comply with the instructions given**.

Citing a dissent from a denial of certiorari to the Supreme Court, *Hodge v. Kentucky*, 568 U.S. 1056 (2012) (Sotomayor, J., dissenting), Zagorski takes exception with the trial court's follow-up, when the jury foreman requested a definition of "mitigating":

> Mitigating would mean any circumstance which would have a tendency to lessen the aggravation, which would have any tendency to — (Pause) — give a reason for the act, I cannot think of a better definition right now, except that it's opposed to aggravating and would have a tendency to lessen or tend — not "to", necessarily, but tend to justify, and to take away any of the aggravation of the circumstance.

But here, all the mitigating evidence Zagorski marshalled during his habeas petition had already been presented to the jury during the guilt phase of trial. *See Zagorski*, 701 S.W.2d at 810–11. The court had already instructed the jury that it could consider that evidence; its later instruction changed nothing.

Finally, Zagorski's claim under *United States v. Jackson* also necessarily fails. Zagorski asserts that because prosecutors offered him two life sentences if he pleaded guilty to the murders, imposing the death penalty after trial unconstitutionally burdened his rights to assert his innocence and demand a jury trial. But *Jackson* invalidated a sentencing provision in the Federal Kidnapping Act because it permitted a court to impose the death penalty on only those defendants who insisted on invoking their constitutional rights to plead not guilty and present their case to a jury. 390 U.S. at 582–83. It did not hold that prosecutors may not offer lesser sentences in exchange for a guilty plea in capital cases. *See, e.g.*, *Brady v. United States*, 397 U.S. 742, 747 (1970). To the contrary, many Supreme Court cases repudiate such a notion, *see United States v. Mezzanatto*, 513 U.S. 196, 210 (1995), and specifically reinforce the teaching

that "a State may encourage a guilty plea by offering substantial benefits in return for the plea." *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978). Although plea bargaining certainly discourages a defendant from exercising his Fifth and Sixth Amendment rights, "the imposition of these difficult choices [is] . . . an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973).

## IV.

Because the district court did not abuse its discretion when it decided that none of Zagorski's proposed equitable considerations merit relief from judgment under Rule 60(b)(6), we AFFIRM.

---

**DISSENT**

---

COLE, Chief Judge, dissenting.  Zagorski's motion for relief rests on Rule 60(b)(6), which permits relief "only in exceptional or extraordinary circumstances[.]"  *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (citations omitted).  In denying Zagorski's motion, the district court held that *Martinez v. Ryan*, 566 U.S. 1 (2012), "is not an extraordinary circumstance warranting Rule 60(b)(6) relief."  This finding is unobjectionable and accords with our precedent.  But the Rule 60(b)(6) inquiry does not end with the determination that *Martinez* alone is insufficient to warrant relief, because Zagorski does not request relief based on *Martinez* alone.  The combination of a change in decisional law, a meritorious underlying constitutional claim, and the irreversible finality of capital punishment warrants relief.  In failing to fully consider the combined weight of these factors, the district court abused its discretion.

I.

Zagorski presents two claims of ineffective assistance of trial counsel.  First, he claims that, "in violation of the Eighth Amendment and *Lockett v. Ohio*, 438 U.S. 586 (1978), the trial court erroneously defined 'mitigating evidence,' thereby precluding full consideration of mitigating evidence of the circumstances of the offense," and "trial counsel was ineffective in failing to object" to this constitutional violation.  Second, he claims that "trial counsel failed to effectively show Jimmy Blackwell's involvement in these murders (for purposes of showing reasonable doubt at the guilt phase or residual doubt at sentencing)."  Appellant Br. 10.

Zagorski concedes both claims were procedurally defaulted.  But "counsel's ineffectiveness in failing properly to preserve the claim for review in state court" can suffice as "'cause' to excuse a procedural default" of a substantive claim.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  And "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Martinez*, 566 U.S. at 9.  Taken together, Zagorski argues these holdings instruct that ineffective assistance of post-conviction counsel "supplies the 'cause' for the otherwise defaulted

cause argument that trial counsel was ineffective for failing to object, under *Lockett*, to the trial judge's instructions." Appellant Br. at 8.

In my view, Zagorski is correct. As the district court observed, our cases counsel against reading *Martinez* any more broadly than the Court intended. *See Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013). But unlike the claims at issue in *Hodges*, Zagorski's claims fall squarely within the scope of the *Martinez* exception—to "establish cause for [his] procedural default of a claim of ineffective assistance at trial" (trial counsel's failure to object to the Eighth Amendment violation), Zagorski presented a claim of "[i]nadequate assistance of counsel at initial-review collateral proceedings" (post-conviction counsel's failure to spot trial counsel's error). *Martinez*, 566 U.S. at 9. This court has long held that failure to object to constitutional violations or other clear legal errors can constitute ineffective assistance within the meaning of *Strickland*. *See, e.g.*, *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999). That trial counsel's error caused a substantive constitutional violation should not prohibit a criminal defendant from arguing his counsel's error constitutes ineffective assistance for *Martinez* and *Edwards* purposes.

Zagorski's reading of *Martinez* and *Edwards* is fully consistent with the reasoning underlying both cases. In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court established the general rule that an attorney's mistake in a collateral proceeding where the defendant had no right to counsel does not establish cause for procedural default. But in *Martinez*, the Court carved out a "narrow exception" to that rule: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9.

In describing why the *Martinez* exception to the general rule was necessary, the Supreme Court explicitly recognized the relationship between *Martinez* and *Edwards*:

> A prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel. The right to the effective assistance of counsel at trial is a bedrock principle in our justice system. . . . Effective trial counsel preserves claims to be considered on appeal, see, *e.g.,* Fed. Rule Crim. Proc. 52(b), and in federal habeas proceedings, *Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

*Martinez*, 566 U.S. at 12. Part of the reason the Court justified the need for the *Martinez* exception was its concern that ineffective trial counsel may fail to preserve claims for habeas review—exactly what happened to Zagorski.

The majority argues that "permitting a two-layer showing of cause to excuse the default of a substantive constitutional claim would detonate *Coleman*'s procedural default bar." Zagorski's approach would require this court to undertake a two-layer cause analysis to excuse procedural default. But the Supreme Court in *Edwards* contemplated this result. Justice Scalia, writing for the majority in *Edwards*, found that a claim of "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim," and that while such a claim "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default,'" the procedural default of "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim" may "*itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim." 529 U.S. at 451–53. Thus, a two-layer showing is also consistent with Supreme Court precedent.

Determining whether a defendant's two sets of ineffective counsel warrant excuse of two instances of procedural default is necessarily a thorny undertaking, and it would not warrant Rule 60(b)(6) relief every time a defendant invokes a simple "phrase," as the majority suggests. Rather, the defendant will still have to overcome the unenviable hurdle of meeting the *Strickland* deficiency and prejudice requirements *and* the *Martinez* substantiality requirement before his motion would be granted. As the Third Circuit has held, where a defendant facing the death penalty "has navigated each twist of the habeas labyrinth" and "overcome every hurdle," "we may review the merits." *Richardson v. Superintendent Coal Twp. SCI*, No. 15-4105, 2018 WL 4701949, at *12 (3d Cir. Oct. 2, 2018). The same should be true in the context of a Rule 60(b)(6) motion.

Nor does Supreme Court precedent require us to construe Zagorski's claims as a successive habeas petition rather than a Rule 60(b) motion. As the majority notes, "[a] movant is not making a habeas claim when he seeks only to lift the procedural bars that prevented adjudication of certain claims on the merits. But he *is* making a habeas claim when he seeks to

add a new ground for relief or seeks to present 'new evidence in support of a claim already litigated.'" *Moreland v. Robinson*, 813 F.3d 315, 322–23 (6th Cir. 2016). Zagorski's claims clearly amount to the former—he is seeking to lift the procedural bars that prevented consideration of his *Lockett* claim on the merits by challenging the doubly-ineffective assistance that led to the procedural default at issue.

*Martinez* excuses procedural default of a claim that trial counsel was ineffective where a petitioner can make two showings: first, that his post-conviction counsel provided ineffective assistance, and second, that the underlying claim of ineffective assistance of trial counsel is a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." 566 U.S. at 14. To establish ineffective assistance, a petitioner must satisfy *Strickland v. Washington*'s requirements of deficiency and prejudice. 466 U.S. 668, 687 (1984).

Zagorski showed that his post-conviction counsel's assistance was ineffective. Specifically, Zagorski presented evidence that his post-conviction counsel never recognized that trial counsel should have objected to the jury instruction under *Lockett*, which amounts to deficient performance under the *Strickland* analysis. *See Sims v. Livesay*, 970 F.2d 1575, 1580–81 (6th Cir. 1992) ("We discern no strategy in [counsel's action], only negligence.").

Zagorski's claim that his trial counsel was ineffective meets *Martinez*'s threshold of substantiality. There is at least "some merit" to his claim that trial counsel's failure to recognize and object to an unconstitutional jury instruction constitutes deficient performance. *See, e.g.*, *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*.").

Zagorski's prejudice claim also has at least "some merit." Failure to object to the mitigation instruction could have prejudiced him in two ways. First, the instruction prevented jurors from considering as mitigating evidence that the victims were "armed, heavily intoxicated, drug dealers." Appellant Br. at 19. The district court was correct to reject any "suggestion that 'a defendant is less culpable if he murders a vile person.'" But a juror could have drawn other inferences—for example, that the victims were dangerous, and even if that did not "tend to

justify" the crime as the district court instructed, it contributed to the circumstances of the crime. *See Lockett*, 438 U.S. 586, 604 (holding that jurors must be permitted to consider "any of the circumstances of the offense" as mitigating evidence). These interpretations highlight why the lack of "individualized consideration of mitigating factors" is unconstitutional in capital cases: preventing the jury "from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." *Id.* at 605–06. If the jury received the correct mitigating instruction and made the individualized consideration the Eighth Amendment requires, "there is a reasonable probability that at least one juror would have struck a different balance." *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

Zagorski's briefing also contains a second, sufficiently "substantial" theory that bolsters his contention that counsel's deficiency prejudiced him. Zagorski's second ineffective assistance claim is premised on his attorney's failure to present mitigating evidence of another suspect. "The Tennessee Supreme Court has stated that residual doubt is a nonstatutory mitigating circumstance[.] Such evidence 'may consist of proof . . . that indicates the defendant did not commit the offense, notwithstanding the jury's verdict following the guilt phase.'" *Sutton v. Bell*, 683 F. Supp. 2d 640, 715 (E.D. Tenn. 2010). If not for ineffective counsel, the jury would have received (a) evidence of another suspect's plot to kill the victim and (b) a jury instruction on mitigation broad enough to encompass the new evidence of an alternative suspect. With these two material changes in Zagorski's proceedings, the probability that at least one juror would not have imposed the death sentence is even greater. I would find Zagorski presented a sufficiently substantial *Martinez* claim to excuse his procedural default.

## II.

"In determining whether extraordinary circumstances are present, a court may consider a wide range of factors," including "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (citations omitted). The district court's abuse of discretion lies in its failure to fully consider the remaining factors that Zagorski put forth in addition to *Martinez*.

The district court acknowledged and dismissed Zagorski's other proposed factors at the end of its opinion, noting there had been "no 'dramatic[] shift,' or any shift at all, in any of the petitioner's other factors." But no such shift is required. A death sentence is itself an equitable factor that moves the needle in favor of granting Zagorski's motion for relief under Rule 60(b)(6). We have repeatedly embraced the "Supreme Court's admonition that '[c]onventional notions of finality ... have no place where life or liberty is at stake and infringement of constitutional rights is alleged.'" *See, e.g.*, *Miller v. Mays*, 879 F.3d 691, 700–01 (6th Cir. 2018) (quoting *Sanders v. United States*, 373 U.S. 1, 8 (1963)). In considering Rule 60(b)(6) motions in capital cases, we have held that "the finality of the judgment against [a defendant] must be *balanced against the more irreversible finality of his execution*," in addition to any constitutional concerns the defendant raises. *Wright v. Warden, Riverbend Maximum Sec. Inst.*, 793 F.3d 670, 673 (6th Cir. 2015) (emphasis added); *see also Cox v. Horn*, 757 F.3d 113, 122 (3d Cir. 2014) (finding courts must consider "whether the capital nature of [the] case or any other factor might counsel that *Martinez* be accorded heightened significance … or provide a reason … for granting 60(b)(6) relief."). This balancing did not take place. Neither a defendant's "interest in avoiding the death penalty" *by itself* nor a "change in decisional law" *by itself* would create exceptional circumstances. *Miller*, 879 F.3d at 701; *Wright*, 793 F.3d at 672. But the combined weight of the shift in decisional law, the death sentence, and the meritorious *Martinez* claim creates an extraordinary circumstance that warrants granting Zagorski's Rule 60(b)(6) motion.

I would reverse the district court's order and grant Zagorski's motion for relief.